**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------X

IN RE: PERRY JOHNSON & ASSOCIATES MEDICAL TRANSCRIPTION DATA SECURITY BREACH LITIGATION

THIS DOCUMENT RELATES TO:

*H.Z. et al. v. N. Kansas City Hosp. Auxiliary et al.*, No. 24-cv-01486;
*Jackson v. Bd. of Trs. of N. Kansas City Hosp. et al.*, No. 24-cv-01485; and
*Ballard et al. v. Meritas Health Corporation et al.*, No. 24-cv-02065.

---------------------------------------------------------X

**REPORT AND RECOMMENDATION**

1:24-MD-03096 (RPK) (LGD)

**LEE G. DUNST**, Magistrate Judge:

This multidistrict litigation ("MDL") concerns an alleged cyberattack during which unknown actors breached the computer network system of Defendant Perry Johnson & Associates, Inc. ("PJ&A"), a medical transcription company. *See generally* Electronic Case Filing ("ECF") No. 92 (Plaintiffs' Consolidated Class Action Complaint). Plaintiffs assert various common law and state consumer protection claims, alleging that the data breach compromised their personal health and identifying information. *See id.*

Presently before the Court is Plaintiffs' unopposed Motion for Preliminary Approval of Class Action Settlement with Defendants The Board of Trustees of North Kansas City Hospital ("NKCH") and Meritas Health Corporation ("Meritas")[1]. *See* ECF No. 186 (the "Motion"). Plaintiffs request that the Court enter an Order (i) preliminarily certifying the Settlement Class;

[1] Per the Consolidated Class Action Complaint, Meritas is a subsidiary of NKCH. *See* ECF No. 92-28 at 1 (notifying individuals of a data breach incident affecting "North Kansas City Hospital ('NKCH') and its subsidiary Meritas Health Corporation ('Meritas')").

(ii) preliminarily approving the terms of the Class Action Settlement between the parties as detailed in the Settlement Agreement; (iii) approving the notice plan and forms of the Settlement; (iv) deferring the entry of an order requiring formal notice (the "Notice Order") to the Settlement Class until a date directed by the Court; (v) scheduling a Final Approval Hearing; (vi) appointing the named Plaintiffs as Class representatives; (vii) appointing Attorneys Stuart A. Davidson, James J. Pizzirusso, and Jean S. Martin, who have been appointed as Co-Lead Class Counsel for Plaintiffs, as counsel for the Settlement Class ("Settlement Class Counsel"); and (viii) designating Verita Global, LLC ("Verita") as the Settlement Administrator.

On July 23, 2026, District Judge Rachel P. Kovner referred the Motion to the undersigned for a Report and Recommendation. *See* Electronic Order dated July 23, 2026. For the reasons below, the undersigned recommends that Plaintiff's Motion be granted.

## I. BACKGROUND

Given the sprawling nature of this MDL, the Court recounts only the factual and procedural history relevant to Plaintiffs' Motion.

### A. Factual Background

Defendant PJ&A is a Nevada corporation with its principal place of business in Troy, Michigan. *See* ECF No. 92 ¶ 63. PJ&A provides transcription services to medical providers, converting the voice reports of physicians and other healthcare professionals into written text. *See id.* ¶ 78. The remaining Defendants (the "Covered Entity Defendants") are various medical providers and customers of PJ&A that, including NKCH and Meritas, provided PJ&A with access to patient personal health and identifying information. *See id.* ¶¶ 64–74.

Plaintiffs seek to represent a putative class of approximately thirteen million individuals whose personal health and identifying information allegedly was compromised during a

cyberattack on PJ&A's network system by unknown actors. *See* ECF No. 92 ¶¶ 2–3. As relevant here, Plaintiffs seek to represent more than 500,000 current and former NKCH patients. *See* ECF No. 186-1 at 2.

### B. Procedural History

#### 1. The Multidistrict Litigation

On January 30, 2024, thirty-five actions[2] related to the alleged data breach of PJ&A's computer network were consolidated for pretrial purposes and transferred to the Eastern District of New York. *See In re Perry Johnson & Assocs. Med. Transcription Data Sec. Breach Litig.*, 717 F. Supp. 3d 1357, 1358 (J.M.P.L. 2024). The MDL Plaintiffs filed a Consolidated Class Action Complaint on August 19, 2024. *See* ECF No. 92. Judge Kovner ordered the following briefing schedule for Defendants' anticipated motions to dismiss:

> Per the Court's bundling rule, defendants shall serve, but not file, their joint motion to dismiss by 11/8/2024. Plaintiffs shall serve, but not file, their opposition by 12/20/2024. Defendants may serve a reply, if any, by 1/31/2025. On 1/31/2025, the parties shall file the complete, bundled motion papers in sequential order on ECF. The same dates and process govern the briefing schedule for [NKCH and Meritas's] motion to dismiss on sovereign immunity grounds.

Electronic Order, dated August 30, 2024. Defendants timely filed their motions to dismiss, which are pending before Judge Kovner. *See* ECF Nos. 130, 134, 138 (Motions to Dismiss filed by PJ&A and the "Covered Entity Defendants,"[3] NKCH and Meritas, and Cook County Health/Cook County Health & Hospital System).

---

[2] Approximately twenty-four additional cases have since been transferred to this District (*see* ECF Nos. 11, 15, 21, 39, 43, 68, 82, 89, 105 (conditional transfer orders)), seven of which have been dismissed (*see* Electronic Orders, dated July 7, August 6, and November 4, 2024, July 23, 2026 (orders of dismissal)).

[3] The "Covered Entity Defendants" include Defendants Bon Secours Mercy Health, Inc., Concentra Health Services, Inc., and Select Medical Holdings Corp., Crouse Health Hospital, Inc. d/b/a Crouse Hospital, Northwell Health, Inc., Salem Regional Medical Center, NKCH, and Meritas.

**2. Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.**

As the motions to dismiss were pending, Plaintiffs, NKCH, and Meritas "recognized a potential window for settlement negotiations." ECF No. 186-1 at 3. On November 21, 2025, after extensive mediation and negotiations, the parties notified the Court that they had settled Plaintiffs' claims against NKCH and Meritas in principle. *See* ECF No. 174 at 2. On the parties' consent, Judge Kovner stayed all proceedings against NKCH and Meritas pending the Court's final approval of the parties' proposed class action settlement. *See* Electronic Order dated December 18, 2025.

On February 17, 2026, Plaintiffs filed their Motion and proposed Settlement Agreement. *See* ECF No. 186. Judge Kovner thereafter referred the Motion to the undersigned for a Report and Recommendation. *See* Electronic Order dated July 23, 2026.

## II. THE PROPOSED SETTLEMENT

The total settlement fund amount is $2,500,000.00 ("Settlement Fund"). *See* ECF No. 186-3 § 1.41. Within thirty days of the entry of the Notice Order, Defendants NKCH and Meritas will deposit the Settlement Fund into an interest-bearing escrow account established by Settlement Class Counsel and administered by Verita. *See id.* §§ 2.1, 2.2, 2.3(d). Verita shall administer the Settlement fund to pay: (1) cash payments to Settlement Class Members (including "Documented Loss" and "Cash Fund" Payments) for Approved Claims; (2) Notice and Administration Expenses; (3) any Attorney's Fee and Expense Award, as approved and awarded by the Court; and (4) Service Awards, if any, as approved and awarded by the Court. *See id.* §§ 1.42, 3.1, 8, 9.

The Settlement Class is comprised of individuals in the Settlement Class List created by Defendant, which shall be produced no more than fourteen days after the entry of the Notice

Order. *See id.* § 6.4. The Settlement Class includes "all patients of North Kansas City Hospital and/or Meritas Health Corporation whose information was contained in the computer systems allegedly compromised in the Data Breach that occurred between March 27, 2023 and May 2, 2023." *Id.* § 1.43. Excluded from the class are: (i) the Judges presiding over the MDL and State Actions[4], their staff, and immediate family members; (ii) Defendants NKCH and Meritas, "their subsidiaries, parent companies, successors, predecessors, and any entity in which [NKCH and Meritas] or their parents have a controlling interest, and their current or former officers and directors"; (iii) any class member who properly requests to be excluded prior to the opt-out period; and (iv) the successors or assigns of any excluded class members.

Upon the "Effective Date" established in Section 10.1 of the Settlement Agreement, Plaintiffs shall obtain a non-reversionary interest[5] in the Settlement Fund. *See id.* §§ 3.10, 10.1. In exchange, NKCH, Meritas, and the "Released Parties" defined in Section 1.36 of the Settlement Agreement will be released from all claims related to the data breach at issue in this MDL. *See id.* §§ 1.36, 4.1. The Settlement Fund will cover the costs of notifying Class Members, administering the Settlement Fund, and any taxable interest. *See id.* §§ 2.3, 3.6. The Settlement Agreement also provides that Class Representatives may receive $2,500 each as service awards upon Court approval. *See id.* § 8.1. Finally, Class Counsel may seek one third of the Settlement Fund for attorney's fees, and separately, reasonably incurred litigation expenses

[4] The Settlement Agreement defines the "State Actions" as "the actions styled *King v. Board of Trustees of North Kansas City Hospital*, No. 2416-CV02603, initially filed in the Circuit Court of Jackson County, Missouri at Independence on January 31, 2024, and currently pending before the Honorable James Francis Kanatzar, *and Kunde v. Board of Trustees of North Kansas City Hospital*, No. 24CY-CV06863, which was transferred to the 7th Judicial Circuit Court of Clay County, Missouri on July 9, 2024, and is currently pending before the Honorable Shane Terril Alexander." *Id.* § 1.47.

[5] The Settlement Agreement provides that "[a]s of the Effective Date, all rights of Defendants and/or their insurer(s) in or to the Settlement Amount or the Settlement Fund shall be extinguished. Upon the Effective Date, no portion of the Settlement Fund shall be returned to Defendants and/or their insurer(s)." *Id.* § 3.10.

and costs. *See id.* § 9.1. Defendant reserves the right to challenge the requested attorney's fees, expenses, and costs. *See id.* § 9.3.

## III. DISCUSSION

Plaintiffs seek class certification for settlement purposes pursuant to Rules 23(a) and 23(b)(3). *See* ECF No. 186-1 at 20–23. Plaintiffs' request also includes a Proposed Order to preliminary approve the settlement, appoint Plaintiffs as Class Representatives, direct a deferred notice to the Settlement Class (and approve the forms and methods of that notice), appoint Mr. Davidson, Mr. Pizzirusso, and Mr. Martin as Settlement Class Counsel, appoint Verita as Settlement Administrator, and schedule a final approval hearing. *See* ECF No. 186-1 at 7–25; ECF No. 186-3 at 54–64 (Proposed Order). For the following reasons, the undersigned recommends that each request be granted.

### A. Conditional Class Certification

"Before certifying a class, a district court must determine that the party seeking certification has satisfied the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation." *Rabinowitz v. Colgate-Palmolive Co.*, No. 25-CV-06996, 2026 WL 632506, at *3 (E.D.N.Y. Mar. 6, 2026) (internal quotation marks and citations omitted). Where, as here, plaintiffs seek class certification under Rule 23(b)(3), the plaintiffs must also demonstrate that "'questions of law or fact common to class members predominate over any questions affecting only individual members,' and 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017) (quoting FED. R. CIV. P. 23(b)(3)). "Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular

issues are more substantial than the issues subject only to individualized proof." *Id.* (internal quotation marks and citation omitted).

The Second Circuit has also recognized an implicit "ascertainability" requirement in Rule 23. *See Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015). "Rule 23 'does not set forth a mere pleading standard.'" *Newton v. R.C. Bigelow, Inc.*, No. 22-CV-5660, 2025 WL 994721, at *4 (E.D.N.Y. Feb. 14, 2025), *report and recommendation adopted*, 2025 WL 965690 (E.D.N.Y. Mar. 31, 2025) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350 (emphasis in original).

Requests for Rule 23 class certification are "subject to a rigorous analysis," and the prerequisites for certification "must be established by a preponderance of the evidence." *Carbone v. Ltd. Run Games, Inc.*, No. 24-CV-8861, 2025 WL 3254618, at *7 (E.D.N.Y. Nov. 21, 2025). "Doubts concerning the propriety of class certification should be resolved in favor of class certification." *Renois v. WVMF Funding, LLC*, No. 20-CV-9281, 2026 WL 2240388, at *4 (S.D.N.Y. July 30, 2026) (citations omitted). While the district court has "substantial discretion" to determine whether class certification is appropriate, *Carbone*, 2025 WL 3254618, at *7 (citation omitted), it is "beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Francisco v. NY Tex Care, Inc.*, No. 19-CV-1649, 2022 WL 900603, at *4 (E.D.N.Y. Mar. 28, 2022). NKCH and Meritas do not oppose conditional certification for the purposes of this settlement. *See* ECF No. 186-1 at 1 n.1.

**1. Rule 23(a)(1): Numerosity**

Rule 23(a)(1) requires that individuals in the class be so numerous that joining all

members is impracticable. *See* FED. R. CIV. P. 23(a)(1). Numerosity is generally presumed in the Second Circuit when the putative class has forty or more members. *See Myers v. Cnty. of Nassau*, No. 22-CV-7023, 2026 WL 1992356, at *9 (E.D.N.Y. July 9, 2026) (citing *Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 263 n.20 (2d Cir. 2021)). "This presumption, however, 'does not provide rigid parameters, and the ultimate issue is whether the class is too large to make joinder practicable.'" *Guma v. City of Long Beach*, No. 23-CV-04529, 2025 WL 1866901, at *4 (E.D.N.Y. July 7, 2025) (quoting *Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, 269 F.R.D. 252, 255 (S.D.N.Y. 2010) (internal quotation marks and footnote omitted)). When considering the feasibility of joinder, courts rely on the factors delineated by the Second Circuit in *Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993):

> (1) judicial economy arising from the avoidance of a multiplicity of actions, (2) geographic dispersion of class members, (3) financial resources of class members, (4) the ability of claimants to institute individual suits, (5) and requests for prospective injunctive relief which would involve future class members

*Robidoux*, 987 F.2d at 936.

Here, the putative class includes all NKCH and Meritas patients whose information was contained in the computer systems exposed in the data breach between March 27, 2023 to May 2, 2023. *See* ECF No. 186-3 ¶ 1.41. The estimated number of class members is over 500,000 patients. *See* ECF No. 186-2 ¶ 4. Thus, the numerosity requirement is satisfied.

**2. Rule 23(a)(2), (3): Commonality and Typicality**

"The commonality and typicality requirements tend to merge into a single inquiry." *Guma*, 2025 WL 1866901, at *4 (citations omitted); *see also Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) ("The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." (citations omitted)). Rule 23(a)(2) requires a plaintiff to show that there are "questions of law or fact

common to the class," and Rule 23(a)(3) requires that the plaintiff's claims be "typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(2), (3). These requirements can be "easily satisfied" by a single common issue. *Abarza v. Spirit Pharms. LLC*, No. 23-CV-03637, 2025 WL 1519147, at *5 (E.D.N.Y. May 28, 2025) (citations omitted); *see also Fischer v. Gov't Emps. Ins. Co.*, No. 23-CV-2848, 2026 WL 482637, at *9 (E.D.N.Y. 2026) (explaining that commonality "does not require that all questions of law or fact raised in the litigation be common; indeed, even a single question of law or fact common to the members of the class will satisfy the . . . requirement" (internal quotation marks, citations, and brackets omitted)); *Kronenberg v. Allstate Ins. Co.*, 743 F. Supp. 3d 465, 481 (E.D.N.Y. 2024) ("As with commonality, the typicality requirement is 'not demanding.'" (quoting *Erickson v. Jernigan Cap., Inc.*, 692 F. Supp. 3d 114, 126 (S.D.N.Y. 2023))). Importantly, the plaintiff must demonstrate that the putative class has suffered the same injury. *See Fischer*, 2026 WL 482637, at *7.

Here, the factual and legal theories underlying the NKCH Plaintiffs' claims are the same as those of the putative class. The proposed class has at least one issue in common: the exposure of their personal health and identifying information during a breach of PJ&A's computer network system. *See* ECF No. 186-1 at 2, 21–22. The NKCH Plaintiffs' common law and state consumer protection claims arise from the same data breach suffered by the proposed class. *See id.* at 21–22; *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) ("To establish typicality under Rule 23(a)(3), the party seeking certification must show that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" (quoting *Robidoux*, 987 F.2d at 936)). Therefore, the commonality and typicality requirements are satisfied.

**3. Rule 23(a)(4): Adequate Representation**

Rule 23(a)(4) requires that "the representative parties . . . fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "Determination of adequacy typically entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Abarza*, 2025 WL 1519147, at *5 (citation omitted); *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) ("Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members.")

There are no conflicts of interest between the NKCH Plaintiffs and the putative class. Rather, the NKCH Plaintiffs' interests coincide with the proposed class—pursuing relief related to their injuries sustained in the data breach. *See* ECF No. 186-1 at 9, 22; *see also In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-CV-8472, 2022 WL 2063864, at *5 (S.D.N.Y. June 8, 2022) (certifying class where the "interests of the individual plaintiffs [were] aligned with members of the class")

Settlement Class Counsel—Mr. Davidson, Mr. Pizzirusso, and Mr. Martin—are sufficiently experienced and qualified. They each have substantial experience in class action litigation, including data breach cases. *See* ECF No. 186-2 ¶ 9; *see also* ECF No. 186-4 (Mr. Pizzirusso's law firm biography); ECF No. 186-5 (Mr. Davidson's law firm biography); ECF No. 186-6 (Mr. Martin's law firm biography). The Court's prior appointment of Mr. Davidson, Mr. Pizzirusso, and Mr. Martin as Co-Lead Class Counsel further supports a finding of adequacy. *See* ECF No. 70 at 1–2 (appointing Mr. Davidson, Mr. Pizzirusso, and Mr. Martin as

Co-Lead Class Counsel). Accordingly, the adequate representation requirement is satisfied.

**4. Ascertainability**

"[A] class is ascertainable if it is defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d 250, 257 (2d Cir. 2017); *see also Bank v. ICOT Holdings, LLC*, No. 18-CV-2554, 2023 WL 2815614, at *7 (E.D.N.Y. 2023) (explaining that Rule 23 "contains an implied requirement of ascertainability, defined by 'objective criteria' that make it 'administratively feasible' to identify the class members" (citations omitted)). Plaintiffs need not demonstrate "administrative feasibility" to discern putative class members at the class certification stage. *Petrobras Sec.*, 862 F.3d at 265; *ICOT Holdings*, 2023 WL 2815614, at *7.

Here, the Settlement Class is ascertainable because it relies on objective criteria. Specifically, the Settlement Class consists of "all patients of North Kansas City Hospital and/or Meritas Health Corporation whose information was contained in the computer systems allegedly compromised in the Data Breach that occurred between March 27, 2023 and May 2, 2023." ECF No. 186-3 § 1.43. Plaintiffs have thus satisfied the Rule 23(a) requirements.

**5. Rule 23(b)(3): Predominance and Superiority**

Pursuant to Rule 23(b)(3), Plaintiffs must also demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3); *Kronenberg*, 743 F. Supp. 3d at 485 ("The Court must take a 'close look' at predominance and superiority requirements." (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997))).

**a. Predominance**

Plaintiffs argue that NKCH and Meritas's negligence and failure to protect the class members' personal health and identifying information predominates over any factual or legal issues that could be raised by individual class members. *See* ECF No. 186-1 at 22–23.

Predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (citation omitted). This inquiry focuses on "whether there are questions of liability common to the class members." *Carbone*, 2025 WL 3254618 at *7 (citation omitted); *see also Abarza*, 2025 WL 1519147, at *6 (same).

Here, Plaintiffs' theories of liability rest on the same factual issues affecting the Settlement Class—namely, whether NKCH and Meritas negligently maintained data security and failed to protect the class members' personal identifying and health information. *See* ECF No. 186-1 at 22–23. Accordingly, the predominance requirement is satisfied. *See Whelan v. Diligent Corp.*, 349 F.R.D. 79, 89 (S.D.N.Y. 2025) (finding the predominance requirement satisfied where the "Class and Subclass members [were] unified by common legal theories of liability tied to common facts related to Diligent's efforts to safeguard employees' [personal identifying information] and its response to the data breach").

**b. Superiority**

"Rule 23(b)(3)'s superiority requirement may be satisfied when 'the costs of bringing individual actions outweigh the expected recovery,' and when consolidation 'will achieve significant economies of time, effort and expense, and promote uniformity of decision.'"

*Rosenfeld v. Lenich*, No. 18-CV-6720, 2021 WL 508339, at *10 (E.D.N.Y. Feb. 11, 2021) (quoting *In re US FoodServ. Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013)). Rule 23(b)(3) lists four non-exhaustive factors relevant to the superiority inquiry: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. FED. R. CIV. P. 23(b)(3). Data breach cases are well-suited for class litigation. *See, e.g., In re Christie's Data Breach Litig.*, No. 24-CV-4221, 2025 WL 2112487, at *2 (S.D.N.Y. July 28, 2025) (finding that "class action and class settlement [were] superior to other methods available for a fair and effective resolution" of a data breach affecting approximately 45,726 individuals).

Here, the NKCH Plaintiffs' claims have already been consolidated and transferred to this District for pretrial purposes. Considering that multiple MDL Defendants (including NKCH and Meritas) have pending motions to dismiss, certifying the Settlement Class will narrow the MDL's scope. *See* ECF Nos. 130, 134, 138. Collectively certifying the claims against NKCH and Meritas is "more economically sensible" than directing Plaintiffs to separately litigate claims affecting more than 500,000 individuals. *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 177 (S.D.N.Y. 2014). Plaintiffs have amply satisfied the superiority requirement.

Because the predominance and superiority requirements of Rule 23(b)(3) are satisfied, the Settlement Class should be preliminarily certified.

**B. Preliminary Approval of the Class Settlement**

Preliminary approval is the first step of a two-step process for settling a class action. *See Hart v. BHH, LLC*, 334 F.R.D. 74, 76 (S.D.N.Y. 2020). If approved, "the court holds a fairness

hearing at which members of the class may be heard to determine whether the proposed settlement is 'fair, reasonable, and adequate.'" *Dover v. Brit. Airways, PLC (UK)*, 323 F. Supp. 3d 338, 348 (E.D.N.Y. 2018) (quoting FED. R. CIV. P. 23(e)(2))

Preliminary approval motions are subject to a "three-step process of review," which can be summarized as follows:

> The court first conducts a preliminary evaluation of the fairness of the proposed settlement agreement to determine whether to give notice of the proposal to all class members. The second step consists of providing notice of a hearing to the class members and holding a hearing to ensure that class members and settling parties are provided the opportunity to be heard. Where a court has granted preliminary approval and afforded notice of the hearing and an opportunity to be heard to all class members, the court then proceeds to the third step—final approval.

*C.K. through P.K. v. McDonald*, 816 F. Supp. 3d 284, 302 (E.D.N.Y. 2026) (internal quotation marks, citations, and ellipses omitted). To grant preliminary approval, "the court need only find that there is 'probable cause' to submit the settlement to the class members and to hold a fairness hearing." *Rodriguez v. CPI Aerostructures, Inc.*, No. 20-CV-982, 2021 WL 9032223, at *3 (E.D.N.Y. Nov. 10, 2021) (quoting *Hernandez v. Merrill Lynch & Co.*, No. 11-CV-8471, 2012 WL 5862749, at *1 (S.D.N.Y. Nov. 15, 2012)).

As amended in 2018, Rule 23(e)(2) lists factors for courts to consider when evaluating applications for preliminary approval, including whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>     (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).

Before the 2018 amendments, courts in the Second Circuit "evaluate[d] the fairness, reasonableness, and adequacy of a class settlement" pursuant to the "nine factors set out in *Grinnell*." *Moses v. New York Times Co.*, 79 F.4th 235, 242 (2d Cir. 2023); *see also City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The nine *Grinnell* factors are:

(1) the complexity, expense and likely duration of the litigation;
(2) the reaction of the class to the settlement;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the risks of establishing liability;
(5) the risks of establishing damages;
(6) the risks of maintaining the class action through the trial;
(7) the ability of the defendants to withstand a greater judgment;
(8) the range of reasonableness of the Settlement Fund in light of the best possible recovery; and
(9) the range of reasonableness of the Settlement Fund to a possible recovery in light of all the attendant risks of litigation.

*Roberts v. Genting New York LLC*, 821 F. Supp. 3d 340, 352 n.1 (E.D.N.Y. 2026) (quoting *Grinnell*, 495 F.2d at 463).

The Rule 23(e)(2) factors supplement the *Grinnell* factors. *See In re GSE Bonds Antitrust Litig*., 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (explaining that "[t]he Advisory Committee Notes to the 2018 amendments indicate that the four new Rule 23 factors were intended to supplement rather than displace these *Grinnell* factors" (citing FED. R. CIV. P. 23(e)(2) advisory committee's note to 2018 amendments [hereinafter "2018 Amendment Notes"])); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) ("[T]he new Rule 23(e) factors [] add to, rather than displace, the *Grinnell* factors.").

There is "significant overlap" between the factors, each of which are considered below. *Carbone*, 2025 WL 3254618, at *12.

**1. Adequate Representation by Class Representatives and Counsel**

As discussed above, Plaintiffs and Settlement Class Counsel have adequately represented the Settlement Class. *See supra* Section III.A.3. Plaintiffs' interests coincide with those of the Settlement Class, and Settlement Class Counsel are sufficiently experienced and qualified to represent the Settlement Class. *See id.* Accordingly, this factor weighs in favor of preliminary approval.

**2. Arms-Length Negotiations After Significant Discovery**

Under Rule 23(e)(2)(C)(ii), courts must address whether a settlement proposal "was negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(C)(ii). Among other things, courts consider the amount of discovery exchanged and counsel's understanding of the case. *See Roberts*, 821 F. Supp. 3d at 352 (granting preliminary approval where "the parties engaged in extensive discovery and, after motion practice, engaged in settlement discussions"); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013) ("The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir.2004))). This factor is coextensive with the third *Grinnell* factor (the stage of the proceedings and amount of discovery completed).

Prior to negotiations, the parties "prepared and exchanged comprehensive mediation briefs and informal discovery." ECF No. 186-1 at 10. Additionally, "Plaintiffs and Co-Lead Class Counsel developed a thorough understanding of the composition of the Settlement Class, the nature of [NKCH and Meritas's] anticipated defenses on the merits, the likely nature of arguments that would be advanced at class certification, summary judgment, and trial, and the

complex technical issues surrounding the claims and defenses in this matter." *Id.* The parties' exchange of discovery and understanding of the case are indicative of arm's length negotiations. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) (approving a settlement agreement where "the parties ha[d] engaged in an extensive informal discovery").

Thus, this factor weighs in favor of preliminary approval.

**3. Adequate Classwide Relief**

Rule 23(e)(2)(C) requires that courts determine whether the settlement provides adequate classwide relief. FED. R. CIV. P. 23(e)(2)(C). Specifically, courts must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.*

**a. Costs, Risks, and Delay of Trial and Appeal**

Rule 23(e)(2) "encompasses" many of the *Grinnell* factors, including "(i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; (iv) and the risks of maintaining the class through trial." *Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20-CV-456, 2021 WL 7906584, at *6 (E.D.N.Y. May 25, 2021). Settlement is favored when litigation will be "long, complex, and expensive." *Id.* at *6 (quoting *In re GSE Bonds*, 414 F. Supp. 3d at 693); *see also Rosenfeld*, 2021 WL 508339, at *5 ("Class action suits have a well-deserved reputation as being most complex." (internal quotation marks and citation omitted)).

Proving liability and damages at trial would be a herculean task for Plaintiffs. The data

breach allegedly impacted more than 500,000 NKCH patients, whose losses may vary widely. *See* ECF No. 186-1 at 2. As evidenced by their pending motion to dismiss (ECF No. 138), NKCH and Meritas deny the allegations made in Plaintiffs' Complaint. *See* ECF No. 186-1 at 11–12. Continued litigation against NKCH and Meritas "would necessitate the expenditure of countless hours and dollars over several more years" without a guarantee of success. *Id.* at 11. Given the costs, risks, and delay of trial and any subsequent appeal, the undersigned finds that this factor weighs in favor of preliminary approval.

**b. Effectiveness of the Parties' Methods for Distributing Classwide Relief**

Rule 23(e)(2)(C)(ii) requires that courts determine the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." FED R. CIV. P. 23(e)(2)(C)(ii). "An adequate method is one that can 'deter or defeat unjustified claims' without imposing an undue demand on class members." *Rosenfeld*, 2021 WL 508339, at *6 (quoting 2018 Amendment Notes). The method does not need to be "perfect," just reasonable and rational, particularly when recommended by experienced counsel. *See Abarza*, 2025 WL 1519147, at *10.

As the Settlement Administrator, Verita will distribute notices, handle claims, and remit settlement payments. *See* ECF No. 186-7 ¶¶ 10–24. Verita will provide class members with notice by email and regular mail. *Id.* at ¶¶ 11–18. Verita will also maintain a "Case Website" and toll-free hotline to provide more information about the lawsuit and answer questions. *See id.* ¶¶ 21–23. In addition, Verita will ensure that settlement payments are remitted only for validated claims. *See id.* These methods of distribution, which are endorsed by Plaintiffs' counsel, support granting preliminary approval. *See* ECF No. 186-1 at 15.

**c. Terms of Proposed Attorneys' Fees Agreement**

Although the Settlement Agreement reserves the determination of attorney's fees for the Court (*see* ECF No. 186-3 § 9.1), Plaintiffs anticipate filing a request for 33.3% of the Settlement Fund (approximately $832,500) in attorney's fees, costs, and expenses. *See* ECF No. 186-1 at 15. "It is very common to see 33% contingency fees in cases with funds of less than $10 million. *Abarza*, 2025 WL 1519147, at *10 (citations and brackets omitted); *see also Rosenfeld*, 2021 WL 508339, at *6 (same). "Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness." *Abarza*, 2025 WL 1519147, at *10 (citation omitted) (collecting cases). Plaintiffs' proposed fees request is standard for class settlements of this size and warrants preliminary approval. *See id.*

**d. Any Related Agreements**

The Court must also consider any agreements made in connection with the settlement agreement. *See* FED. R. CIV. P. 23(e)(2)(C)(iv), (e)(3). Here, the parties have not entered into any agreements other than the Settlement Agreement. *See* ECF No. 186-1 at 17. This factor has no bearing on preliminary approval. *See Rosenfeld*, 2021 WL 508339, at *7 ("[T]he parties have not entered into any agreements other than the Settlement Agreement that has been submitted for approval. Accordingly, this factor poses no obstacle to preliminary approval." (citation omitted)).

**4. Equitable Treatment of Class Members**

Rule 23(e)(2)(D) requires that proposed class action settlements "treat[] class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D). When addressing equitability, "the court may weigh 'whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may

affect class members in different ways that bear on the apportionment of relief.'" *Rosenfeld*, 2021 WL 508339, at *17 (quoting 2018 Amendment Notes).

The Settlement Agreement provides class members with two avenues of relief. Class members may receive up to $10,000 for documented out-of-pocket losses related to the data breach. *See* ECF No. 186-3 § 3.1(a). Alternatively, class members lacking sufficient documentation may receive cash payments from the net settlement amount at equal rates. *See id.* § 3.1(b). Simply put, the Settlement Agreement "appropriately and fairly accounts for material differences among class members' claims." *Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349, 2021 WL 1259559, at *8 (E.D.N.Y. Jan. 6, 2021). Further, the scope of the release against NKCH and Meritas applies uniformly to all class members. *See* ECF No. 186-3 § 4.1.

In addition, the Settlement Agreement provides for Service Awards of $2,500 per class representative. *See* ECF No. 186-3 § 8.1. These awards are reasonably designed to compensate the class representatives for their efforts, the risks associated with becoming named plaintiffs, and the burdens of litigation. *See Massiah v. MetroPlus Health Plan, Inc.*, No. 11-CV-05669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012). Service Awards of $2,500 per class representative are equitable given their contributions to the litigation. *See In re 3D Sys. Sec. Litig.*, No. 21-CV-1920, 2024 WL 50909, at *17 (E.D.N.Y. Jan. 4, 2024) (recommending service awards of $7,500 for the lead plaintiff and $3,500 for the other named plaintiffs); *Carbone*, 2025 WL 3254618 at *14 (finding service awards of $2,500 per class representative to be reasonable).

Because the Settlement Agreement distributes relief and awards equitably, this factor supports preliminary approval.

**5. NKCH and Meritas's Ability to Withstand Greater Judgment**

Under the seventh *Grinnell* factor, courts consider a defendant's "ability to withstand a

greater judgment than that provided for in the proposed settlement." *In re 3D Sys. Sec. Litig.*, No. 21-CV-1920, 2023 WL 4621716, at *9 (E.D.N.Y. July 19, 2023). The rationale underlying this factor is that if the settlement represents the maximum judgment the defendant could sustain, the settlement is likely adequate. *See Carbone*, 2025 WL 3254618, at *15. However, the "defendant is not required to 'empty its coffers' before a settlement can be found adequate." *Hunter v. Blue Ridge Bankshares, Inc.*, No. 23-CV-8944, 2025 WL 1649323, at *19 (E.D.N.Y. June 11, 2025) (quoting *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 191 (S.D.N.Y. 2012) (citation omitted))).

Plaintiffs concede that this factor "does not favor settlement at this stage." ECF No. 186-1 at 19 n. 11. NKCH and Meritas have not provided evidence regarding their ability to withstand a judgment greater than $2,500,000. Considering that other *Grinnell* factors weigh in favor of settlement, however, this factor is not dispositive. *See Moure v. DialAmerica Mktg., Inc.*, No. 22-CV-625, 2025 WL 3896786, at *6 (D. Conn. Apr. 7, 2025) ("While Defendant provides no evidence demonstrating that it could not withstand a greater judgment here, this alone does not render the settlement unfair, particularly where, as here, other *Grinnell* factors weigh heavily in favor of settlement." (internal quotation marks and citations omitted); *In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *9 (noting that a defendant's "ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." (citation omitted)).

**6. Class Reaction**

The second *Grinnell* factor should be evaluated at a later stage, as the Settlement Class has yet to be provided with notice. *See Mikhlin*, 2021 WL 1259559, at *4 n.2 ("One of the *Grinnell* factors, the class's reaction to the proposed settlement, cannot be considered until after notice has been provided to the class. Accordingly, the court does not consider that factor at this

stage of the proceedings."). If the Court preliminary approves the settlement, this factor should be analyzed after the final approval hearing.

**7. Reasonableness of the Settlement**

Courts evaluating the eighth and ninth *Grinnell* factors must weigh the reasonableness of a settlement against the best possible recovery and litigation risks. *See In re Payment Card*, 330 F.R.D. at 47–50 (combining the eighth and ninth *Grinnell* factors to analyze a preliminary approval motion). Whether a settlement falls within the "range of reasonableness" depends upon the legal and financial uncertainties of litigation. *Abarza*, 2025 WL 1519147, at *12.

Here, the Settlement Fund is $2,500,000. ECF No. 186-3 ¶ 1.41. Plaintiffs submit that "[t]he Settlement Agreement provides significant relief for the Settlement Class" when compared to recoveries in other data breach cases. *See* ECF No. 186-1 at 19, 20 n.12 (collecting cases). Plaintiffs correctly note that establishing liability, damages, and maintaining class action status are not guaranteed. *See id.* at 11–14, 19–20. Notably, NKCH and Meritas's motions to dismiss are pending before Judge Kovner. *See* ECF No. 138. Given the risks of continued litigation, the settlement falls within the "range of reasonableness" warranting preliminary approval. *See Hunter*, 2025 WL 1649323, at *17 (finding that "that the costs, risks, and likely duration of continuing to litigate th[e] matter [were] significant and that the tangible present recovery of the settlement weigh[ed] in favor of preliminary approval of the proposed settlement").

**C. Appointment of Settlement Class Counsel**

Plaintiffs request that the Court appoint Mr. Davidson, Mr. Pizzirusso, and Mr. Martin as Settlement Class Counsel. Rule 23(g) lists four factors that court must consider when appointing class counsel: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions; (iii) counsel's knowledge of the

applicable law; and (iv) the resources counsel will commit to representing the class. FED. R. CIV. P. 23(g)(A)(1)(i)–(iv).

As noted above, Mr. Davidson, Mr. Pizzirusso, and Mr. Martin have significant experience with class actions, including data breach cases. *See supra* Section III.A.3. They have also devoted substantial time and resources towards evaluating the parties' claims and defenses, investigating the data breach and interviewing potential witnesses, and preparing briefs. *See* ECF No. 186-2 at ¶¶ 9–14. Considering their efforts and collective experience, the undersigned recommends that the Court appoint Mr. Davidson, Mr. Pizzirusso, and Mr. Martin as Settlement Class Counsel.

**D. The Proposed Notice of Settlement**

Plaintiffs request approval of their Notice Plan, including the deferred distribution of Plaintiffs' Proposed Summary and Long Form Notices. *See* ECF No. 186-1 at 23–25; ECF No. 186-3 Exh. B (Long Form Notice), Exh. D (Summary Notice). The undersigned finds that the Notice Plan is adequate and recommends that the Court defer distribution of Summary and Long Form Notices.

**1. The Notice Plan, Summary Notice, and Long Form Notice are Adequate**

Because Plaintiffs seek to certify the Settlement Class and settle their claims against NKCH and Meritas, the requirements of Rule 23(c) (class certification notice) and Rule 23(e) (settlement or dismissal notices) must be satisfied. *See Chang v. Philips Bryant Park LLC*, No. 17-CV 8816, 2019 WL 8105999, at *13 (S.D.N.Y. Oct. 23, 2019), *report and recommendation adopted*, 2020 WL 104812 (S.D.N.Y. Jan. 9, 2020).

Rule 23(c) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be

identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). Rule 23(e) similarly requires notice in a "reasonable manner" to class members bound by the settlement. FED. R. CIV. P. 23(e)(1)(B). Notice may be distributed by regular mail, electronically, or other appropriate means. FED. R. CIV. P. 23(c)(2)(B). Class notice must explain:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

FED. R. CIV. P. 23(c)(2)(B)(i)–(vii).

Upon reviewing the Notice Plan, Summary Notice, and Long Form Notice, the undersigned finds that the criteria of Rule 23(c) are satisfied. The Summary Notice briefly describes the nature of this action and provides information for class members to learn more about the settlement. *See* Summary Notice at 1. The Long Form Notice explains the factual circumstances of the alleged data breach, delineates Plaintiffs' claims, defines the Settlement Class, and emphasizes the binding effect of the Settlement. *See* Long Form Notice at 1, 5–6, 9. The Long Form Notice also explains class members' rights to (and the process for) request exclusion and hire their own counsel. *See id.* at 12–14. Once finalized, the Long Form Notice will list the date, time, and location of the Final Approval Hearing. See *id.* at 16. The Summary and Long Form Notices will be distributed by regular mail and email. *See* ECF No. 186-7 ¶¶ 11–18.

Subject to Plaintiffs' deferred distribution scheme, the undersigned recommends that the proposed notice forms and plans be approved.

**2. Deferred Notice is Appropriate**

With the consent of NKCH and Meritas, Plaintiffs request that the Court defer entry of the Notice Order pending potential further settlements in this MDL. *See* ECF No. 186-1 at 1 n.1, 23–25. Plaintiffs argue that deferring notice will reduce the costs of maintaining the Settlement website and prevent unnecessary redistribution of the notice forms. *See id.* at 6 n.6, 24.

Courts outside of this District have approved deferred notice plans to reduce expenses for class members. *See, e.g.*, *Albert v. Glob. Tel*Link Corp.*, No. 20-CV-01936, 2024 WL 4644631, at *12 (D. Md. Oct. 31, 2024) (approving deferred notice where the plaintiffs sought to "create efficiencies and cost savings for the Settlement Class members"). Here, deferring notice will reduce expenses, preserve the Settlement Fund, and does not pose any risk of prejudice to the Settlement Class. *See McKinney v. U.S. Postal Serv.*, 292 F.R.D. 62, 68 (D.D.C. 2013) ("[T]he court may decide to postpone giving formal notice under Rule 23(c)(2) if there is a reason for the delay and it would not prejudice those class members who are not before the court." (citation omitted)). Accordingly, the undersigned recommends that the Court defer entry of the Notice Order until a date chosen by the Court.

**E. Approval of the Settlement Administrator**

Lastly, Plaintiffs request that the Court appoint Verita as Settlement Administrator. *See* ECF No. 186-1 at 6. The undersigned is satisfied with Verita's claims processing and disbursement procedures, as well as its "more than 40 years of industry experience." ECF No. 186-7 ¶ 3. The courts in the Southern District of New York have recently appointed Verita to administer settlement claims in several class action suits. *See, e.g.*, *In re Amtrust Fin. Servs., Inc. Sec. Litig.*, No. 17-CV-1545, 2026 WL 1707211, at *2 (S.D.N.Y. June 12, 2026) ("The firm of Verita Global . . . is hereby appointed to supervise and administer the notice procedure as well

as the processing of Claims."); *Liberty Cap. Grp. v. Oppenheimer Holdings Inc.*, No. 25-CV-4822, 2026 WL 1453707, at *2 (S.D.N.Y. May 22, 2026) ("The Court approves the retention of Verita Global ('Verita') as the Claims Administrator."); *Painter v. Strides Pharma, Inc.*, No. 25-CV-4189, 2026 WL 1433065, at *2 (S.D.N.Y. May 21, 2026) ("Verita Global ('Verita') is appointed as Claims Administrator and shall be required to perform all the duties of the Claims Administrator."). Accordingly, the undersigned recommends that Verita be appointed as Settlement Administrator.

## IV. CONCLUSION

For the reasons above, the undersigned recommends that Plaintiffs' Motion (ECF No. 186) be granted, and that the Court enter the following Order:

(i) Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), the Court conditionally certifies the Settlement Class to include: All patients of North Kansas City Hospital and/or Meritas Health Corporation whose information was contained in the computer systems allegedly compromised in the Data Breach that occurred between March 27, 2023 and May 2, 2023;

(ii) Pursuant to Federal Rule of Civil Procedure 23(e), the Court preliminarily approves the terms of the Class Action Settlement between the parties as detailed in the Settlement Agreement;

(iii) The Court preliminarily approves the Notice Plan, Long Form Notice, and Summary Notice;

(iv) The Court defers the effectuation of the Notice Plan. Within a reasonable amount of time after the date of this Order (with such reasonable amount of time not to exceed 90 days unless otherwise agreed to by the Parties or ordered by this Court), Plaintiffs shall move the Court to order effectuation of the Notice Plan. On a date to be set by the Court, the Settlement Administrator shall effectuate the Notice Plan and distribute the Summary and Long Form Notices;

(v) The Court shall, at a date and time later selected by the Court, conduct an in-person Final Approval Hearing to determine: (a) whether the Settlement Agreement should be approved as fair, reasonable, and adequate to the Settlement Class; (b) whether the Final Approval Order should be entered in substance

materially the same as the Final Approval Order submitted by the Parties with the Motion for Final Approval; (c) whether to approve Class Counsel's Application for a Fee and Expense Award and Service Awards for the Class Representatives; and (d) any other matters that may properly be brought before the Court in connection with the Settlement Agreement;

(vi) The Court designates named Plaintiffs A.J., H.Z., M.Z., G.Z., Michelle Kunde, and Tammie King as representatives for the Settlement Class;

(vii) The Court appoints the following attorneys to act as Settlement Class Counsel on behalf of the Settlement Class, Settlement Class Representatives, and with respect to the Settlement Agreement: Stuart A. Davidson, James J. Pizzirusso, and Jean S. Martin; and

(viii) The Court appoints Verita Global, LLC as the Settlement Administrator.

## V. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* FED. R. CIV. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Kovner. FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS. *See Thomas v. Arn*, 474 U.S. 140, 154–55 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995).

**SO ORDERED**:

Dated: Central Islip, New York
September 3, 2026

/s/ Lee G. Dunst
LEE G. DUNST
United States Magistrate Judge